# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| JOSEPH MICHAEL MOONEY, | : | CRIMINAL NO. |
| Movant, | : | 1:07-CR-0060-TWT-JSA-1 |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:10-CV-3195-TWT-JSA |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | MOTION TO VACATE |
| | : | 28 U.S.C. § 2255 |

## ORDER AND FINAL REPORT AND RECOMMENDATION

Movant, Joseph Michael Mooney, was convicted on December 19, 2007, in this District under the above criminal docket number. [Doc. 67]. Movant seeks via 28 U.S.C. § 2255 to challenge the constitutionality of his conviction and sentence. [Doc. 104]. Presently before the undersigned for consideration is Movant's motion [Doc. 104], and the United States of America's (hereinafter "Government") response to the motion [Doc. 117]. Also before the Court are Movant's numerous motions. [Docs. 126, 141, 143, 147, 149, 150, 151, 153, 155, 156, 157, 158, 160, 161, 163, 165, 167, 168, 171, and 172]. For the reasons discussed below, it is recommended that Movant's § 2255 motion be denied.

I. <u>Background</u>

The United States Court of Appeals for the Eleventh Circuit made the following findings with regard to Movant's case:

> In December 2005, Mooney initiated an online conversation with Joanne Southerland, an agent of the Federal Bureau of Investigation, in an internet chat room that was previously titled "Incest." Southerland portrayed herself as a 41–year–old mother of a ten-year-old daughter, Sydney. Mooney asked Southerland if she allowed her daughter to be sexually active, and Southerland said no. Later in the conversation, Mooney asked Southerland if she wanted to introduce her daughter to intercourse. Mooney stated that he allowed his twelve-year-old son to be sexually active and asked about Sydney's sexual development and whether Southerland would allow a man to "play with her." Southerland replied that she had considered the possibility, but she thought that Sydney was too young. Mooney asked if Sydney would pose for him.
>
> Mooney and Southerland continued to communicate online and also exchanged sporadic telephone calls for over a year. Mooney would often initiate their conversations and, on occasion, Southerland would ignore Mooney's messages or end their conversation abruptly to determine if Mooney was genuinely interested in Sydney. In their chat sessions, Mooney described graphically the acts he wanted to perform on Sydney and sent explicit pictures to Southerland, including pictures of his erect penis. Mooney also asked numerous, explicit questions about Sydney's sexual development; stated that he wanted to meet Sydney before she got "a lot older" and began menstruating; and asked Southerland to groom Sydney for sexual activity by allowing Sydney to see her masturbate, encouraging Sydney to do the same, and talking to Sydney about intercourse.
>
> Mooney expressed concern in several chat sessions that both he and Southerland could "get . . . in trouble," but made preparations to meet

Southerland and Sydney in May 2006. Southerland asked if Mooney had any sexual experience with young girls and Mooney explained that he had engaged in sexual activity with girls as young as six years old. When Mooney had to postpone his trip, he expressed concern that Southerland would allow another man to deflower Sydney. In January 2007, Southerland told Mooney that a man in Ohio had expressed an interest in "an ongoing" thing with Sydney. Mooney replied that he wanted "to be the one to make a woman out of Sydney," and he made final plans to meet Southerland.

Agent Herb Stapleton observed Mooney leave his home in Missouri and head to Atlanta, Georgia. When Mooney climbed out of his car to meet Southerland, federal agents placed Mooney under arrest. Mooney volunteered to agents Cameron Roe and Jeff Wright that he planned to engage in sexual activities with Southerland's daughter. The agents found a condom in Mooney's pocket.

Mooney was charged in a two-count indictment for interstate enticement of a minor to engage in sexual activity and aggravated sexual abuse with a minor. 18 U.S.C. §§ 2422(b), 2241(c). Mooney pleaded not guilty and mentioned that he planned to argue entrapment. The government notified Mooney of its plan to introduce evidence seized from his computer, including "multiple" photographs of adult men and young girls having intercourse and "hundreds" of internet chat sessions involving sex with children.

Mooney filed a motion in limine to limit the amount of government exhibits. Mooney argued that the pictures and chat sessions were cumulative and more prejudicial than probative. The government responded that Mooney's chat sessions and collection of child pornography were relevant to establish his intent to have sex with a young girl. The district court denied Mooney's motion.

At trial, the government submitted evidence relevant to Mooney's intent to commit the sex crimes, including the chat sessions between Mooney

and Southerland, "samplings" taken from over 1600 other chat sessions involving sex with children, and photographs of minors and adults performing sexual acts. After a government agent described the contents of the photographs, the district court instructed the jury that it could consider the evidence of Mooney's other acts only to determine if he intended to commit the criminal acts charged in the indictment. The district court admitted over Mooney's objection pictures of Mooney and male genitalia found on Mooney's computer.

After the government rested, Mooney moved for a judgment of acquittal. Mooney argued that there was no evidence to prove that he "induced or enticed an actual child" or he intended to use force to accomplish the sex crimes. The district court denied the motion.

Mooney testified that after he had learned that his daughters were molested as children, he had conducted online research and visited chat rooms to understand his daughters' trauma and to protect his grandchildren. Mooney stated that Southerland "pressured" him to visit Georgia; he "played a role" to engage Southerland in further discussions; became "concerned" that Southerland would allow another man to abuse Sydney; and had a "personal crusade" to protect Sydney. Mooney testified that he believed Southerland's story was a "farce," but he drove to meet her in case Southerland might abuse Sydney. If he met Southerland, Mooney allegedly intended to report Southerland to the authorities and to use evidence on his computer to incriminate Southerland.

*United States v. Mooney*, 303 F. App'x 737, 739-40 (11th Cir. 2008).

Movant was convicted following a three-day trial that began on July 19, 2007, of both counts in the indictment.  [Docs. 49-52, Docs. 77-80].  On December 20, 2007, this Court sentenced Movant to prison for 120 months on Count One and 360

4

months on Count Two, to be served concurrently, for a total sentence of 360 months, with a life term of supervised release. [Doc. 67]. The prison sentences were the minimum statutory penalties authorized by 18 U.S.C. § 2422(b) and 2241(c).

On December 16, 2008, the Eleventh Circuit affirmed Movant's conviction and sentence. *Mooney*, 303 F. App'x at 743. On October 5, 2009, the United States Supreme Court denied Movant's petition for a writ of certiorari. *Mooney v. United States*, 130 S. Ct. 281 (2009).

Movant filed a § 2255 motion, raising the following ineffective assistance of trial counsel claims:

1. counsel was ineffective for failing to move to dismiss the indictment because it failed to allege the element of actual or attempted sexual abuse of an actual child;

2. counsel was ineffective for failing to move to suppress information seized in the search of Movant's computer;

3. counsel was ineffective for failing to attack Agent Southerland's testimony as inadmissible expert testimony;

4. counsel was ineffective for failing to call an expert to refute the Government's evidence that Movant intended to commit aggravated sexual abuse when he crossed state lines; and

> 5. counsel was ineffective for failing to present an entrapment defense.

[Doc. 104 at 2-3].

## II. Standard of Review

Under § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Hill v. United States*, 368 U.S. 424, 426-27 (1962); *see generally United States v. Hayman*, 342 U.S. 205 (1952). "To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

This Court may deny § 2255 relief without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is

6

entitled to no relief."  28 U.S.C. § 2255; *see Long v. United States*, 883 F.2d 966, 968 (11th Cir. 1989).  Under § 2255, however, an evidentiary hearing is required when the Court cannot determine from the record that the prisoner is entitled to no relief. *United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988).  As discussed below, the motion and record of the case conclusively show that Movant is not entitled to relief or to an evidentiary hearing.

III.  Discussion

   "Ineffective assistance of counsel claims are governed by the standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."  *Green v. Nelson*, 595 F.3d 1245, 1249 (11th Cir. 2010).  "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 687).  To establish deficiency, a petitioner must show that "counsel's representation 'fell below an objective standard of reasonableness.'"  *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688).  There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Strickland*, 466 U.S. at 688.  Additionally, to establish prejudice, a petitioner must prove that there is "a

7

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Since both prongs of the two-part *Strickland* test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." *Ward v. Hall*, 592 F.3d 1144, 1163 (11th Cir. 2010) (citation omitted).   Furthermore, "[s]urmounting *Strickland*' s high bar is never an easy task." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

A.  Ground One

Movant alleges that his trial counsel should have moved to dismiss the indictment because Section 2241(c) "must allege as an element that actual sexual abuse of a child occurred." [Doc. 104-1 at 17].  Movant first raised the underlying claim challenging the indictment at the sentencing hearing when arguing his motion for a judgment of acquittal. [Doc. 81 at 6-7].  The Court rejected Movant's argument, holding that "the case law in this circuit is very clear and well established that the crime is committed even though there does not exist an actual minor to be enticed or an actual minor who is the subject of interstate travel." [*Id.* at 15].

8

Movant again raised this claim on appeal, and the Eleventh Circuit rejected it, citing to *United States v. Root*, 296 F.3d 1222, 1227-31 (11th Cir. 2002) and holding: "We have rejected Mooney's argument that an actual child must be involved in these sexual abuse crimes.  That Mooney could not engage in a sexual act because his intended victim was fictitious is irrelevant; it is his intent and conduct that establish guilt." *Mooney*, 303 F. App'x at 742.  Indeed, in a subsequent published opinion, the Eleventh Circuit ruled that under Section 2241(c), "the crime is crossing a state line with the requisite criminal intent.  Conviction 'turns simply upon the illegal purpose for which [the defendant] traveled.'" *United States v. Farley*, 607 F.3d 1294, 1334 (11th Cir.), *cert. denied*, 131 S. Ct. 369 (2010) (citing and quoting *Root*, 296 F.3d at 1231-32).

Because the Eleventh Circuit has already rejected Movant's argument that an actual child must be involved in the crimes, this issue cannot be challenged in this § 2255 motion.  "The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000).  "Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." *Id.*  Thus, Movant's claim that his indictment should have been dismissed

9

because Section 2241(c) "must allege as an element that actual sexual abuse of a child occurred" is without merit, and counsel was not ineffective for failing to raise this meritless issue.

B. Ground Two

In his second ground for relief, Movant argues that counsel was ineffective for failing to file a motion to suppress the search of Movant's laptop computer. Specifically, Movant argues that, during the investigation of this case, the Government contacted some school superintendents that Movant had worked for in Missouri. [Doc. 104-1 at 37-38]. Movant speculates that the Government must have obtained his former employer's contact information from certain accounting files he maintained on his computer, and he argues that those materials were not within the scope of the items that the warrant authorized law enforcement to search for. [*Id.* at 38]. However, none of this alleged illegally seized information was ever introduced as evidence against Movant at trial. Indeed, Movant concedes elsewhere in his motion that "nothing was presented at trial" regarding his former employers. [*Id.* at 45]. Thus, any suppression argument raised by counsel would have been moot since this information was not introduced into evidence at trial. *See United States v.*

AO 72A
(Rev.8/82)

*Diecidue*, 603 F.2d 535, 561 (5th Cir. 1979).[1]  *See also United States v. Hill*, No. 3:11cr24/MCR, 2011 WL 2112517, at *1 n.1  (N.D. Fla. May 26, 2011) (noting that because the government did not intend to utilize any evidence seized from residence, the issue of suppression regarding that evidence was moot).

If Movant is arguing that, because the agents allegedly exceeded the scope of the warrant in searching his accounting files at all, *all* of the evidence found on his computer should have been suppressed, such argument fails.  "Total suppression of all items seized, including items within a warrant's scope, is not appropriate unless the executing officer's conduct 'exceeded any reasonable interpretation of the warrant's provisions.'"  *United States v. Khanani*, 502 F.3d 1281, 1289 (11th Cir. 2007) (quoting *United States v. Wuagneux*, 683 F.3d 1343, 1354 (11th Cir. 1982)). Here, Movant does not attach the warrant itself or otherwise establish the scope of the search authorized.  The Government represents that the warrant authorized the search for "evidence of communications, photographs, and computer files exchanged" between Mooney and Southerland relating to his trip to Georgia.  Given Movant's extensive use of his computers in chatting with Southerland and planning his trip,

---

[1]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

11

agents could have reasonably expected that Movant would have created accounting entries that reflected his plans and budget for his trip to Atlanta or entries meant to disguise his trip expenses.  [Doc. 79 at 145-54].  Moreover, forensic computer searches often involve broad searches into the files and directories within a computer's hard drive.  Thus, even assuming Movant's factually unsupported claim that agents obtained this evidence through their search of his computer is true, he has not shown anything to suggest that the search "exceeded any reasonable interpretation of the warrant's provisions."  Thus, Movant fails to demonstrate either a deficiency by counsel or actual prejudice.

Moreover, in one of his many other motions, Movant argues that the evidence of his former employer's contact information was actually obtained two weeks before the execution of the warrant to search his computer.  [Doc. 126].  Thus, according to Movant, the evidence was actually obtained as a result of a *warrantless* search.  However, as previously discussed, any such claim as it relates to the effectiveness of his counsel is without merit because this evidence was not admitted at trial.  Moreover, Movant offers nothing beyond speculation to suggest that this information was obtained by a warrantless search.  Accordingly, Movant's ineffective assistance of counsel claim in Ground Two is without merit.

12

C.  Ground Three

Movant contends that trial counsel was ineffective for failing to challenge Agent Southerland's testimony under Fed. R. Civ. Evid. 702.  Movant argues that Agent Southerland's testimony should have been challenged as inadmissible expert testimony because Agent Southerland testified about her investigative technique in that, in her undercover capacity, she was trying to figure out "if they are for real or if it's fantasy . . . . ."  [Doc. 78 at 46-47].  Agent Southerland testified that this was why she delayed in responding to Movant's chats.  Agent Southerland stated, "We ignore them typically on purpose to see if they will actually try to chat with us again to determine if they are for real or if it's fantasy for them."  [Doc. 78 at 46].  Movant argues that Agent Southerland "was the only person who testified as to [Movant's] alleged intent" and that had she been precluded from doing so, the outcome would have been different.  [Doc. 104-1 at 42].

Movant's argument is without merit.  Agent Southerland explained that in the 14 months that Movant pursued Sydney (December 2005 to January 2007), she never initiated any chats with him, and she repeatedly terminated their chats abruptly or declined to respond to his inquiries.  [Doc. 78 at 43, 46-48, 50-51; Doc. 79 at 90-91].  Agent Southerland's testimony was not offered as expert testimony as to "intent," but

13

rather to explain the Agent's investigation, i.e., why she responded the way she did to Movant's chats and specifically why she refrained from initiating contact. Movant's intent was established through the content of the chat transcripts.  As held by the Eleventh Circuit:

> The government proved that Mooney intended to engage in a sexual act with Sydney. The content and tenor of Mooney's online discussions with Southerland, the lewd pictures that he sent, his decision to travel to Georgia when he learned she might be deflowered by another man, and his arrival with a condom in his pocket all suggest that Mooney was interested in sexual activity. Mooney testified that he traveled to Georgia to protect Sydney, but the jury was free to disbelieve his story. We consider Mooney's statement that the jury discredited as substantive evidence of his guilt. *See United States v. Brown*, 53 F.3d 312, 314 (11th Cir.1995). The jury was entitled to find that Mooney intended to sexually abuse Sydney.

> Mooney took several steps to accomplish the crime. Mooney planned in detail his trip and coordinated his travel plans with Southerland. Mooney drove from Missouri to Georgia and arrived at the time and location designated by Southerland. *See United States v. Yost*, 479 F.3d 815, 819 (11th Cir. 2007). A reasonable jury could find that Mooney traveled to Georgia to have intercourse with a minor.

*Mooney*, 303 F. App'x at 742.

Moreover, any testimony on the question of whether or not Movant was merely fantasizing was irrelevant in light of Movant's actual defense.  He did not claim that he was fantasizing.  His claim was that he was acting as a concerned citizen and

intended to set up and report the person he believed he was communicating with. Agent Southerland's testimony about how she tries to weed out mere fantasizers in her investigation was neither here nor there in view of this "white knight" defense. In this regard, it was not prejudicial for counsel to refrain from objecting. And the decision to object or not was inherently tactical, since an objection might have only drawn attention to, and signaled concern about, testimony that was irrelevant to the actual defense pursued.

Thus, counsel was not ineffective for failing to object to Agent Southerland's testimony. Also, Movant has not shown that the outcome of the proceeding would have been different had counsel objected to the testimony. Accordingly, Movant's argument is without merit.

D. Ground Four

Movant argues that counsel was ineffective for failing to call an expert to refute the Government's evidence that Movant intended to commit aggravated sexual abuse when he crossed state lines. As previously discussed, Agent Southerland's testimony did not qualify as expert testimony, but as an explanation regarding why she responded to Movant's chats in the manner that she did. The content of Movant's chats with Agent Southerland showed his intent and expert testimony would not have

been helpful or necessary.  Also, the decision regarding who to call to testify at trial is a matter of trial strategy.  *See Crawford v. Head*, 311 F.3d 1288, 1312 (11th Cir. 2002) (holding that the court will not substitute its judgment for that of trial counsel regarding trial strategy and tactics).  Thus, Movant's claim in Ground Four is without merit.

### E.   Ground Five

Movant contends that counsel was ineffective for failing to present an entrapment defense.  At trial, Movant asked the Court to instruct the jury on the defense of entrapment, and the Court gave that instruction.  [Doc. 80 at 276-77]. However, Movant rendered that defense irrelevant when he testified that he traveled to Georgia as part of his private campaign against internet-based child exploitation crimes.  [Doc. 79 at 171-77].  Movant could not argue entrapment, because he never conceded that he ever formed the intent to have sex with Sydney as a result of law enforcement inducement or persuasion.  Movant does not cite to anything in the record that would support an entrapment defense.  Movant testified that he never formed criminal intent, and if his wife had come to court, she would have brought a note that would have demonstrated his intent was always to protect Sydney.  [*Id.* at 208-10].  Based on this testimony, Movant's counsel argued the "white knight"

16

defense, which the jury apparently rejected and the Court later observed was unbelievable. [Doc. 80 at 258-62; Doc. 81 at 23]. Thus, counsel was not ineffective for failing to argue a defense for which there was no support. *See Wade v. United States*, No. 09-00094-CG, 2012 WL 2873665, at *18 (S.D. Ala. June 20, 2012) (holding it was not ineffective assistance for counsel to fail to proceed on an entrapment defense that was unavailable where the defendant had shown no government inducement and testified that he was working on behalf of law enforcement when he purchased drugs). Furthermore, Movant cannot show prejudice based on counsel's failure to argue an entrapment defense in light of Movant's testimony at trial and the evidence against him. Accordingly, Ground Five is without merit.

IV.  Movant's Motions

In his motion for leave to amend his first motion to vacate [Doc. 126], Movant adds to his claim in Ground Two that counsel was ineffective for failing to file a motion to suppress the search of Movant's laptop computer. As previously discussed, Movant argues in this motion that the evidence in question was obtained a full week before the issuance of the search warrant. Movant's motion for leave to amend [Doc. 126] is **GRANTED** to the extent that the Court considered Movant's claim in its

17

discussion in Ground Two.   However, for the reasons discussed, the Court recommends denying the claim raised in the motion.

In Movant's Motion for Discovery, for an Evidentiary Hearing, and to Appoint Counsel [Doc. 141], Movant contends that his claims in his § 2255 motion entitle him to discovery, an evidentiary hearing, and appointment of counsel.   As previously discussed, the motion and record of the case conclusively show that Movant is not entitled to relief or to an evidentiary hearing.   *See Aron v. United States*, 291 F.3d 708, 714-15 (11th Cir. 2002).   Because the Court has determined that an evidentiary hearing is not warranted, Movant has no right to appointed counsel.   *See Barbour v. Haley*, 471 F.3d 1222, 1227 (11th Cir. 2006).   In addition, Movant "is not entitled to discovery as a matter of course" in his § 2255 proceeding.   *Isaacs v. Head*, 300 F.3d 1232, 1248 (11th Cir. 2002) (quoting *Bracy v. Gramley*, 520 U.S. 899, 904, 908-09 (1997)).   For the reasons discussed in the analysis of Movant's grounds for relief, he has not demonstrated "good cause" for discovery because he has failed to present allegations that, if more fully developed, may show that he is entitled to relief.   *Id.* Thus, Movant's motion [Doc. 141] is **DENIED**.

18

In Movant's motion for return of property [Doc. 158], Movant claims that he is entitled to the return of his computer because FBI agents delayed unreasonably long before they searched it.   Movant's motion is actually an attack on the reasonableness of the search of his computer, which he cannot bring in this action. A prisoner cannot raise a claim based on an allegedly unreasonable search in a collateral attack if he could have raised such a claim in his trial or direct appeal. *See Stone v. Powell*, 428 U.S. 465, 494 (1976).  Moreover, the Government represents [Doc. 162 at 2], and Movant does not deny, that the computer in question contained child pornography.   Such contraband will not be returned to Movant.   Thus, the undersigned recommends that the motion be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Movant's two Motions for Summary Judgment [Docs. 153 and 157] and his Motion for Ruling on Motion for Summary Judgment [Doc. 161] be **DENIED** as moot.

**IT IS ORDERED** that Movant's motions seeking expedited rulings (Motion for Immediate Ruling [Doc. 163], Motion to Expedite Ruling [Doc. 167], Second Motion to Expedite Ruling [Doc. 168], Motion to Order Magistrate to Rule on All Pending Motions [Doc. 172]), motions to withdraw or renew motions (Motion to Renew All Outstanding Motions [Doc. 155], Motion to Withdraw the Motion for

19

Summary Judgment [Doc. 156], Motion to Withdraw the Motion to Stay Proceedings [Doc. 171]), motions opposing actions taken by the Court (Motion in Opposition to the Court's Order for the Government to Respond [Doc. 143], Motion to Correct Docket Entry on Motion for Immediate Ruling [Doc. 165]), motions asking the Court to take judicial notice of facts (Motion to Take Judicial Notice [Doc. 149], Second Motion to Take Judicial Notice [Doc. 150]), and various other motions (Motion to Stay Proceedings [Doc. 147], First Motion for Specific Discovery [Doc. 151], Motion for Leave to Appear by Telephone [Doc. 160]) are **DENIED** as moot.

## V.  Certificate of Appealability

According to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Under 28 U.S.C. § 2253(c)(2), a certificate of appealability shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right."  A prisoner satisfies this standard by demonstrating that reasonable jurists would find that the district court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable.  *See*

20

*Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Movant has failed to make a substantial showing of the denial of a constitutional right.  Movant's ineffective assistance of counsel claims are without merit.  Accordingly, **IT IS RECOMMENDED** that a certificate of appealability be **DENIED**.

VI.  Conclusion

Based on the foregoing, **IT IS RECOMMENDED** that Movant Joseph Michael Mooney's motion to vacate sentence [Doc. 67] be **DENIED**, and that he be **DENIED** a certificate of appealability.

**IT IS FURTHER RECOMMENDED** that Movant's motion for return of property [Doc. 158] be **DENIED**, and Movant's two Motions for Summary Judgment [Docs. 153 and 157], and Motion for Ruling on Motion for Summary Judgment [Doc. 161] be **DENIED** as moot.

**IT IS ORDERED** that Movant's motion for leave to amend his first motion to vacate [Doc. 126] is **GRANTED**, Movant's Motion for Discovery, for an Evidentiary Hearing, and to Appoint Counsel [Doc. 141] is **DENIED**, and Movant's Motion in Opposition to the Court's Order for the Government to Respond [Doc.

AO 72A
(Rev.8/82)

143], Motion to Stay Proceedings [Doc. 147], Motion to Take Judicial Notice [Doc. 149], Second Motion to Take Judicial Notice [Doc. 150], First Motion for Specific Discovery [Doc. 151], Motion to Renew All Outstanding Motions [Doc. 155], Motion to Withdraw the Motion for Summary Judgment [Doc. 156], Motion for Leave to Appear by Telephone [Doc. 160], Motion for Immediate Ruling [Doc. 163], Motion to Correct Docket Entry on Motion for Immediate Ruling [Doc. 165], Motion to Expedite Ruling [Doc. 167], Second Motion to Expedite Ruling [Doc. 168], Motion to Withdraw the Motion to Stay Proceedings [Doc. 171], and Motion to Order Magistrate to Rule on All Pending Motions [Doc. 172] are **DENIED** as moot.

The Clerk is **DIRECTED** to terminate the referral to the undersigned magistrate judge.

**IT IS SO RECOMMENDED AND ORDERED** this 20th day of March, 2013.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

22